May it please the court, Susan York on behalf of plaintiffs and interveners below. This case is about whether the district court erred in dismissing for failure to name the real party in interest when real parties were actively trying to enter the suit and prosecute the claims on behalf of the class. Looking to Rule 17, there are two main problems with the district court's analysis. First, there is simply no way to square the district court's analysis with the which creates an affirmative defense. And second, there's an issue of timing. Instead of focusing on the mistake in naming these plaintiffs in 2013, the district court erroneously focused on a period beginning more than two years later when plaintiff's counsel learned of the prior bankruptcies for the very first time. By applying these incorrect legal standards in deciding the Rule 17 issue, the district court necessarily abused its discretion. So I'll turn to the first. Let me ask you a question. It seems to me one of the things the district court relied on was that the fact that the two plaintiffs actually knew of their bankruptcy and actually knew from having talked to a lawyer that they had a cause of action. And so the court didn't focus on necessarily what the lawyer learned but what the fact the clients knew. And then by focusing on what the clients knew and didn't do anything about, found that the delay was actually attributable to those two plaintiffs who learned about it and didn't do anything about it. So I'm wondering how you how you deal with that part of the finding, which is not so much when the lawyer found out about it, but the clients had known about it and the court was quite quick. The district court's findings on this point, as I read them and the undisputed evidence in the record, is that the plaintiffs were not aware of their the existence of their legal claims at the time they filed for bankruptcy. And that makes a lot of sense because the state of the law was very confused at the time and it was unclear whether these were viable claims under Hawaii law. And there had been decisions in the district of Hawaii saying that perhaps these weren't. And that's why this case was stayed for four years. So the district court explicitly found that at the time plaintiffs filed their bankruptcies, they did not know they had legal claims related to their foreclosures. And the court also found that at the time plaintiffs talked to counsel in this case for the first time, they did not know that their bankruptcies were relevant. And so they did not tell counsel. The plaintiffs did not have any awareness that their prior bankruptcies were relevant to this litigation. So I think under the district court's own findings, plaintiff's conduct here was honest and innocent. Well, following up on Judge Whaley, though, I think that the Propios were aware in September 12, and Tapato was aware in September 2000. Yeah, Tapato was in 2011 or 12. So how do you, how does both states square with their knowledge? Just to clarify the question, they were aware of the existence of their legal claims that form the basis of this litigation? Yes. Yes. I think the key thing which the district court recognized is that there's a disconnect between being aware of the existence of these legal claims and understanding that there's any relevance to a prior closed bankruptcy. And I think the district court credited plaintiffs who said they did not realize that their prior bankruptcies were relevant to this litigation in any way, shape, or form. And that's the reason why... Go ahead. I'm sorry for interrupting. I read the district court's ruling the same way you do, to the extent that the district court accepted their representation, that at least during the pendency of the bankruptcy case, they didn't know. But I think what the district court's analysis really turned on is the lack of a reasonable explanation for the delay between 2015, when counsel learned of the bankruptcy proceedings, but yet there's a failure to do anything about it until early 2018. And so I think the court, the way I read the court's ruling is that, look, I'll accept the fact that you didn't know that you had a claim at the time your bankruptcy proceedings were pending, but certainly counsel learned of it. He knew what to do and simply failed to do it. And so in terms of whether it's difficult to determine who the real parties of interest was, it really wasn't difficult, especially when you're dealing with a fairly experienced counsel who's had the standard practice that he deviated from. And in terms of whether it's a reasonable mistake or not, the delay basically led to the conclusion that it wasn't a reasonable mistake. So was it not appropriate for the district court to take those into considerations in determining whether ratification should be denied in the case? Correct. I agree with your reading, and it was not appropriate for the district court to take that into account. And here is why. Under Rule 17, the court may not dismiss an action for failure to prosecute in the name of the real party in interest until after an objection, a reasonable time has been allowed for the real party to step forward and enter the suit. And so essentially there are two questions here. This court has sort of added a judicial gloss on that plain language rule to say, okay, this rule applies, you have to allow a cure once the defendant objects, as long as the original mistake was which is a very, very low threshold, as this court has made clear. So I would direct this court's attention to Jones, for example, where the law was very clear at the time that counsel chose which plaintiff to name, and he simply got the law wrong. And that was good enough for this court because the court said, well, it was a little confusing, and the district court had accepted a stipulation naming the new plaintiff. This isn't really the best reason, but there's no sign of active deceit. So that's the first point, it's just that the standard is quite low. And the second point is that the mistake we're looking at is the mistake to name the wrong party, in other words, the party that's not the real party in interest. And that mistake only happened once here, and it happened in 2013, when it's undisputed that counsel had no idea that these the time when the misproprios and the paduas were added to the complaint, and we're asking whether that mistake was honest or understandable, and that's a very, very low threshold. Before you run out of time on your initial, would you address the intervention issue? Because even if we move on from the rule 17, which we love, of the intervention denial. So the district court denied intervention, the motion to intervene as moved, and it never addressed the pending motion to amend the complaint to add named plaintiffs who would have adequately represented the class. And it's worth noting that that motion to amend had been pending since 2017, before the bank ever raised a real party in interest objection, but the court provided no reasoning for dismissing or denying the motion to amend, and that alone is an abuse of discretion. Similarly, the motion to intervene was not moved because the court had jurisdiction to consider it, and should have done so. Mr. Shima, do you want to? Thank you. Your honors, the trustees adopt all of the arguments of plaintiffs. I would just like to quick point from the trustees' perspective. The district court here did something that is unprecedented. It threatens the bankruptcy system. It used rule 17 to dismiss a cause of action that the bankruptcy trustees undisputedly owned and unequivocally sought to continue for the value solely because of the debtor's motives to sue on the claim that was not initially disclosed to the trustees. Now, to my knowledge, a rule 17 dismissal based on those facts has never been affirmed on appeal, and with good reason. Why should a bankruptcy trustee's statutory authority to litigate claims for the benefit of creditors hinge on the debtor's post-bankruptcy state of mind? And why should a court-seeking bank get a windfall if the trustees submitted no error? And why should creditors be placed first in line to pay the price of that windfall? The answer is that none of this should have happened under a level-headed reading of rule 17.83, and the district court simply abused its discretion in deciding that a dismissal was in the interest of justice. Thank you, your honors. Thank you. All right. May it please the court, Matt Fitzgerald on behalf of Bank of America. The core issue in this case is understandable mistake, and because the trial court properly used its discretion to find no understandable mistake in this case, all of the plaintiff's actions were justified. Now, when the defendant pointed out that these were the wrong plaintiffs, that these plaintiffs had had no claim against the bank for a period of years, the trial court took briefing on that issue. She took a declaration from plaintiff's counsel explaining his perspective on what happened, and she held a one-and-a-half-hour hearing where the judge eyeballed counsel for both sides, asked questions, and assessed plaintiff's actions and motives. At the end of this hearing, the court ultimately ruled that the initial decision of who to name would have been an easy decision, that it was not a difficult area of law, that plaintiff's counsel had worked in that area of law, even knew the bankruptcy trustees here already. She ruled additionally that there was no good explanation for the more than two-year delay after the plaintiff's counsel admitted that he knew of the problem and before he did anything. Mr. Fisher, let me ask you something. Why, according to the bankruptcy trustee's lawyer, should the bankruptcy trustee be held responsible for the sins that you say were committed by the plaintiff's lawyer? Yes, your honor. So, as an initial matter, the bankruptcy trustees shouldn't be here on appeal because they weren't parties below. I mean, there's a 20HA letter that we filed on that, but in terms of the equities of the bankruptcy trustees, it is a perfectly legitimate consideration within the district court's discretion under Rule 17 in terms of how to assess what to do with the bankruptcy trustees, and the exact point that you're several times in the briefing at excerpts of record, page 177, and again at the hearing where she was, where the argument was made, don't do anything to the trustees. They didn't do anything wrong. But ultimately, there are other considerations here, including the protection of the way that bankruptcy is supposed to go. There would be no deterrent or no sort of teeth to Rule 17 at all. If in any bankruptcy case ever, you would always be saying, well, the trustees are separate. They should always be let in. Be specific in this case. It sounds like you're arguing some policy, but it seems like a trustee that would not know they had a cause of action until they find out, and then they act. Why should they be penalized by what a lawyer that doesn't represent them did before that? Well, Your Honor, so there is case law that addresses the fact that it's still well within the district court's discretion to refuse relief under Rule 17. So, for instance, in the Wieberg case in the Fifth Circuit, it's discussed in the briefs, but on remand, the trial court looked at the trustees in that case and said, well, it's a long way off from any recovery. It's uncertain. The bankruptcy creditors, the unsecured creditors, didn't get anything initially, and they won't get anything now, and this is no great injustice on the facts of that case, and it's no great injustice on the facts of this case either. The unsecured creditors are essentially credit card companies. The vast majority of these debts are less than $5,000. They have nothing to do with the alleged missteps in foreclosure that took place in this case, in some cases years later, and so we're talking about a bankruptcy, bankruptcies that happened 10 years ago. The creditors never filed proofs of claim or participated in the bankruptcies in any meaningful way, either before or after they were told about this and so under these circumstances, there's essentially no great injustice to the creditors from what happened in this case. Again, that was argued to the district court, and it did not move her. Does it matter, counsel? I'm looking at ER 17 of the district court's ruling. Does it matter that the court accepted plaintiff's representation that they were unaware of their present claims during dependency of their bankruptcy proceedings? Because I think in Rule 17, you do have to make an assessment as to whether it was an honest mistake at the time that the action was filed to name these parties, and the district court didn't do that. It focused very much on the reasonableness of counsel's delay in raising this issue when counsel became aware of it. Well, the court focused primarily, Your Honor, yes, on the intentional, deliberate, and strategic delay by plaintiff's counsel to keep this class action alive, which is a perfectly proper thing for the court to have relied on. As for the specific two plaintiffs, the Paduas and the Propios, they may not have known during their bankruptcy that they had this claim, but they did know before they entered this action. As was discussed earlier, I believe both of them attested that they knew of this possible action in 2012, and yet they joined this case in 2013. So these plaintiffs did know, or knowledge can be attributed to them, that's about that. But I really think the deliberate strategy of the plaintiff's counsel is what got the district judge going here, and quite properly so. So the strategy is, after the plaintiff's counsel knows he has the wrong plaintiffs, he knows these plaintiffs have no claim whatsoever, he keeps them in place for more than two years without saying anything or doing anything, because his goal is to keep the class action alive, and he needs them in place until he can find replacement plaintiffs who would be good lead class representatives, preferably people who have not been through bankruptcy, because bankruptcy trustees are notoriously bad class representatives. They owe fiduciary duties to the creditors, totally separate from the class. So that's the strategy that you can see the district court addressing here, and I'm not aware of a case in this circuit where there have been findings that prosecuting litigation on behalf of the wrong plaintiff knowingly was strategic and deliberate, and yet can be solved anyway under rule 17. Let me ask you then on the intervention question, because the net result of this case is a dismissal as a house case, but why a lot of your briefing goes to the merits of intervention, but that wasn't considered really by the district court. So I'm not sure why the district court was correct in simply saying, well, the case is moot, therefore we have no intervention motion to address, and we have cases that look at that even if a named plaintiff becomes moot in this case, if you're correct on rule 17, it would still permit consideration of intervention, would it not? It would, your honor, and so to be clear, I'm not saying the district court lacked jurisdiction to consider the motion to intervene. What I'm saying is the order here essentially already addressed that. I mean, the motion to intervene is the last step of the plaintiff's counsel's strategic and deliberate action. That's how he ultimately solves the problem of leading the class. That is by bringing in new plaintiffs who don't have this bankruptcy problem, and the court did in some sense address that. I see you're reading between the lines as to what he addressed, but I don't see that he addressed the intervention motion. Well, your honor, keep in mind as the intervention motion is bringing in the same additional plaintiffs who are named in the second amended complaint, and the court did address the second amended complaint, discussed some element of prejudice, but really the right way to look at this is this is all one scheme. It's all one course of action by plaintiff's counsel that's designed to keep the wrong plaintiffs in place until he can fully replace them, and so that's what the judge is reacting to, and I think the right way to read that order is to say based on what I've already identified, what I've already found under Rule 17, and against the second amended complaint and the prejudice thereof, there's no reason to consider intervention separately. Intervention is the last leg of the scheme that the trial judge was refusing to permit to go forward in this case, and moreover, as for intervention now, all five of the interveners have since filed litigation against the bank in their own cases in Hawaii State Court, which seems to be where they would prefer to be since this case even began in state court and was removed to federal court. They have pushed forward with those cases. They're not placeholders. Some of them have come past the motion to dismiss stage in state court in Hawaii, and so the interveners have their own cases. They really have lost nothing by not being permitted to intervene. I hear that, but that seems to me to be a question to take a look at where there's overlapping cases because even though you say that the district court can directly address intervention, what district court said was as follows. In light of the dismissal, the court denies plaintiff's motion to intervene as moot, so the court did not consider it, and there may be good reasons why these individuals don't want to be representative class members, but that's a different question from do you have a legitimate class member who maybe should be allowed to intervene because otherwise the class action, as you know, just simply dries up and goes away, and that's a very different proposition from individual plaintiffs having their own individual cases that are going forward, so I just don't understand. You're saying that the motion to intervene was not moot. Is that what you're saying? It was not. It was not moot in the article three sense. It was moot in terms of she need not address it at that point having already addressed and rejected the scheme that created the intervention motion. Why not let the district court make that determination? I mean, I hear that you might be right, and you have a lot of excellent briefing on the point, but from reading the court's order, we don't have an answer to the merits of the intervention. Well, keep in mind, your honor, anywhere that the order mentions or alludes to the second amended complaint and the changes and the additions made in the second wanted. The interveners are named in the proposed second amended complaint, and so there is meaningful grappling with the issues that the interveners sought to raise, and separately, what I'm trying to say now is after this happened, the interveners turned around and sued the bank and have moved forward. It's not clear to me now that these interveners could, would want to or could possibly come back into this case now, even if they wanted to. I mean, some of them have trial dates in Hawaii state court. They're in discovery. They've surpassed motions to dismiss, so they've won preliminary motions in Hawaii. Wait, doesn't that really call out for the district court to sort that out, to see are there interveners that are still live interveners or want to be interveners, and if not, you know, they go back to the state court, but your argument really is one of the merits that the district court, you have a lot of additional facts here that are not in front of the district court or in front of us. So I'm just having some trouble now. The other question is, were we to uphold the denial of the pen, which is an abusive repression standard, is the intervention under the same standard? Well, your honor, yes, it's understandable mistake is the core of this case, and when plaintiffs fail to show an understandable mistake, the district judge is perfectly entitled in the exercise of her discretion to say, this is the end of the case. You've brought a case on behalf of people who have no claim. It's not understandable, these actions that you've taken along the way and the strategy that you had when you knew that these were the wrong plaintiffs and you pushed forward anyway. And so ultimately, the end result of that is the dismissal of the case and recognizing that the motion to intervene is the last leg of the strategy by plaintiffs counsel to ignore and go around rule 17. It's proper to consider it altogether, and that's ultimately what happened in this case. Mr. Fitzgerald, explain something to me. You don't have much time, but in reading the order on involving the trustees, it would seem to me that the trustees would be in a position that they would not be responsible for whatever errors have been made by the parties before they tried to intervene, at least from an equitable standpoint. And that the finding that the trustee had not been properly substituted, I'm not sure that's the right word, but to be a party seems to be somewhat technical. I mean, seems like the trustee came in and said, we think this case has merit and we want to proceed, but they may have picked the wrong slot to put it in, but it seems sort of technical. Could you explain that to me, just what it was that they did that was so bad that even though they wouldn't be bound by the prior actions of the plaintiff's lawyer, that nonetheless, they shouldn't be allowed to come into rule 17. So your honor, a couple of things. So the primary reason why what the trustees did is not permissible is the lack of understandable mistake under rule 17. So rule 17 speaks to that. That understandable mistake wasn't their mistake. I mean, they didn't. That's true. That happened long before they got into it. So it's not them anymore. They didn't make that mistake. That's true, your honor. And so, but nonetheless, the case, I mean, they are separate from the case before they come in. And I think the problem is the statute of limitations had gone by. And so that's why essentially the trustees care about this. Otherwise they could just bring their own case against the bank separately, ignoring what happens to the wrong plaintiffs in this case. So the trustees on their own are too late in that sense. But our second argument, which I think is what you're asking about, the failure of ratification by the trustees, comes from this court's decision in Turner. And the idea is that in bankruptcy, if a trustee is going to substitute, they need to actually substitute and come in and take over the go through all these steps to make the named plaintiffs existing, actually the right plaintiffs. And what they did here is this sort of medium path between the two where they said, yes, it's really our claims. No, we don't want to be named. You go ahead. But the claims are really for us. And that's essentially just asking for a further violation of Rule 17. The fact pattern here doesn't set up a normal ratification. Thank you. Thank you. Thank you. So I'd like to start with the bank's idea that council's inaction in 2015 was part of some kind of nefarious scheme. And I think there are three serious problems with that story. First is that the bank, in fact, knew about these prior bankruptcies from the outset of this litigation. So there's no surprise to the bank that the Paduas and misproprios weren't the real party in interest. The bank was the one delaying raising that objection. The reason the bank knew about these prior bankruptcies is because they were listed as creditors. And that's at ER 416, 451, 471, and 500. So the bank was on notice all along. Second, Rule 17 creates an affirmative defense. The bank knew about these prior bankruptcies, but it didn't raise them. It didn't raise them until the one plaintiff who was in the suit, who was the real party in interest, Ms. Digamo, had been dismissed by stipulation. So the bank knew about the bankruptcies all along. It didn't raise them until a strategic point in the litigation. And a lot of the case law on this obligation is on defendant to raise these issues, real party in interest issues, at a time when the defect can be cured. In other words, when the trustees in this case can step forward into the litigation. So that's the second issue with the bank's story. This is an affirmative defense. The bank is the one that didn't raise it until late in the litigation. Another issue with the account is that it's quite normal for plaintiff's counsel not to affirmatively raise an affirmative defense that is the burden is on defendant to raise. So I think it's useful to think of this in another context. For example, the statute of limitations that creates an affirmative defense. If during the litigation, plaintiff's counsel realizes that the statute of limitations has run on a claim, counsel is under no obligation to affirmatively raise that issue. It's up to defendant to identify the issue, to weigh the pros and cons of raising the affirmative defense, and to raise it in a timely manner. There's simply nothing nefarious about plaintiff's conduct here. And finally, it's just wrong that plaintiff's inaction was somehow strategic. When plaintiff counsel found out about the bankruptcies in 2015, Ms. Tagamo was still a plaintiff. She was a plaintiff for two more years. She was the real party in interest. There was no problem with the suit. Someone could have been substituted in. There was going to be no issue. Also, under Rule 17a3, substitution or ratification of the trustees automatically relates back. So there's no problem that counsel was trying to avoid. And finally, the claims were told under both state and federal law. So there's no statute of limitation problem with adding new plaintiffs. So for all of those reasons, the bank's account is just not accurate. And I'd also like to turn to the idea that the bank's rule helps the bankruptcy system. And I just want to direct this court to its decision in Ocquinn, that's 733 F3D 267, a 2013 case. And there the court goes through rationale by rationale, basically every rationale that the bank has advanced here and rejects each of them in very analogous circumstances where the debtors had reopened the bankruptcy to declare their claims, which they had initially omitted through inadvertence, just like here. And the court just simply goes through and says, actually, this decision to dismiss the case does not protect the bankruptcy system at all. And also that it's not this court's role to protect the bankruptcy system. The bankruptcy system already has a lot of protections in place. So the bank's sort of policy-based argument that Judge Whaley alluded to fails as well under this court's case law in Ocquinn. And finally, at a minimum, this court should remand so that the district court can consider on the merits for the first time, both the motion to intervene and the motion to amend. The court's denial of the motion to amend is entirely unreasoned. This court has held inherent that that is an abuse of discretion. Remand is required there. And the court explicitly dismissed the motion to intervene as moot. And the bank has essentially admitted that that was incorrect. If the court has no further questions. Thank you. It appears not. Thank you. I'd like to thank all
judges: McKeown, Nguyen, Whaley